**Dorothy E. LEVENS, Plaintiff,**

v.

**GENERAL SERVICES ADMINIS-TRATION et al., Defendants.**

No. 20295–4.

United States District Court,
W. D. Missouri, W. D.

March 27, 1975.

John R. Hutcherson, Kansas City, Mo., for plaintiff.

Fredrick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., Douglas P. Hinds, Chief Litigation Counsel LC, Washington D. C., for defendants.

## FINDINGS AND OPINION

ELMO B. HUNTER, District Judge.

This is a suit under the Equal Employment Opportunity Act (Public Law 92–261) as it amends the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

Plaintiff, Dorothy Levens, is an employee of the United States government at General Services Administration, Region VI, Kansas City, Missouri, as a budget analyst, GS–11. In this suit she asserts that she was discriminated against on the basis of sex in being passed over in favor of a male for a newly created job which had a GS–12 rating.

A full trial to the Court commenced on March 10, 1975.[1] At the trial all par-

---

1. There is no need to discuss plaintiff's contention, which the defendants contest, that she was entitled to a trial de novo in the federal district court. She has sought and has been granted that trial.

ties adduced evidence in support of their respective contentions and they filed a stipulation of facts.

### Facts As Found By The Court

On August 12, 1970, the new position of supervisory budget analyst for the Office of Financial Management, so classified as of August 3, 1970, was officially posted, according to the applicable Civil Service rules. There were two applicants for the newly created position. These were the plaintiff and Richard Mullinix, a 15-year GSA employee, Grade GS–11. Both the plaintiff and Mr. Mullinix timely applied for the newly created position before the closing of such applications occurred on August 19, 1970. Mr. George Perryman, Regional Director of Public Buildings, at that time was the GSA Selecting Officer for the new position. He was authorized to appoint a panel to evaluate the candidates for the newly created position. Mr. Perryman selected Dwight Shields, Chief of Finance Division, to act as a one man panel to make the evaluation.[2] The letter directing Mr. Shields to so act, was signed by Mr. D. A. Patterson at Mr. Perryman's direction while Mr. Perryman was away from his office on travel.

Dwight Shields used four customary and acceptable evaluation factors in making the evaluation. These four factors were (1) supervisory potential; (2) awards; (3) experience; and (4) job performance. As a result, the evaluations that he made were that plaintiff was "qualified" and that Richard Mullinix was "highly qualified" for the newly created position. Shields, a neutral and experienced evaluator, testified that his findings and evaluation which he recommended to Patterson were objectively made and free of any type of bias. He stated in effect that his interviews of pertinent personnel showed that plaintiff while a competent employee who got along well with those who worked under her, did not get along well with her superiors, took direction from them poorly and reacted to such directions somewhat adversely and with an argumentative type response.

George Perryman testified he made his selection essentially on Shields' report and evaluation. Perryman stated that he was (and had been for sometime) being urged to advance women and minorities and that then and now he believes in and is a strong advocate of that policy. However, in the light of the fact Mr. Mullinix was rated (and properly so in Perryman's judgment) as "highly qualified" for the new position while plaintiff was rated only as "qualified" for it, he selected Mullinix solely on the basis of merit to be the person to fill the new position. He denied any consideration of sex in making his decision.[3]

Dee A. Patterson, Director of Building Management, and supervisor of Mr. Robert VanBuskirk who in turn was plaintiff's supervisor testified concerning his rating of plaintiff, which Shields obtained as a part of his study. According to Patterson, plaintiff experienced difficulty in dealing with her superiors; with following their orders; and with taking instructions from her supervisors. She often openly disagreed with such instructions. He testified that "her supervisory capacity was less than average." * * * "That's the way I felt because I worked with her." * * * "She could not delegate authority." Patterson rated Mullinix higher than plaintiff ". . . because I felt he was better in that department" (supervisory functions). Patterson denied any bias based on sex.

Robert VanBuskirk, a thirty-three year government employee and plaintiff's immediate supervisor, testified she had

---

2. The vacancy in question requires substantial knowledge in the field of financial management, and Mr. Shields is an acknowledged expert in this field.

3. The Court has accepted the testimony of both Shields and Perryman as being completely credible and reliable testimony. Both men evidenced freedom from any type of bias, including sex based bias.

difficulty getting along with her supervisors from 1967 to 1970 or 1971; that she had difficulty meeting deadlines set by her supervisors; and that she used a loud disruptive voice. Plaintiff testified VanBuskirk was prejudiced against her and once indicated to her that she would never get a GS–12 while he was there. VanBuskirk denied any such prejudice, and flatly denied he ever made such a statement. Review of his ratings of plaintiff over the years, and other evidence, indicates his ratings of her were consistent, reasonably fair and without any indication of bias of any type.

The defendants' final witness was Edward E. Mitchell. Mr. Mitchell was the Director of Civil Rights who had the duty to make an independent, thorough investigation of plaintiff's charges of job and rating discrimination based on sex and to render the agency decision thereon. From his testimony it is clear that he is a highly qualified, experienced, independent investigator of such matters, thoroughly briefed and sensitive to the rights of minorities and women, and free of any bias against women or minorities.[4] Mr. Mitchell's careful and in depth investigation resulted in his official written report of September 22, 1972, which concluded that, "As to your particular charge that there was discrimination based on sex in the evaluation of applicants and final selection for the position of Supervisory Budget Analyst, GS–12, Public Building Service, Region VI, we can find no evidence of overt or covert discrimination."

Thereafter, the Civil Service Commission Board of Appeals and Review in Washington, D.C. reviewed the case and on June 20, 1973, stated that the Board of Appeals and Review "has concluded (in the light of the entire appellate record) that the evidence does not substantiate the complainant's allegations that she was denied promotion on the basis of sex."

Miss Levens was the principal witness on her own behalf.[5] She had worked for a time during World War II in the Quartermaster Corps, Department of Army. Her government career work can be viewed as commencing in February, 1950 when she commenced work with the Veterans Administration as a GS–1. In June, 1951 she transferred to GSA as a GS–3, and through steady promotions from that date transferred to Public Buildings Service with a two step rate increase from GS–5 to GS–7. The type of work she principally performed was budget preparation and analysis. By 1969 she had been promoted to GS–11. It is evident from her testimony that she believes she should have obtained an even higher grade than GS–11 by 1967. She gave no evidence to support her forming belief that because some men in the past had advanced faster than she such advancements must have been on a basis of sex discrimination. Her unsuccessful effort to obtain the new GS–12 position in question crystalized her belief. Various incidents occurred, such as a conference she had with Jeffery Hilleson,[6] then the GSA Regional Administrator for Region VI, in which she claims she was harassed and pres-

---

4. Mr. Mitchell's credentials and background experience as a bias-free independent investigator are confidence inspiring. He described the shortage of women applying for accountant-budget type work; noted that for some years prior there had been some "underutilization" in minorities and women not only in GSA Region VI, but in all of GSA. He described the excellent on-going program to advance minorities and women, which program was in full use in 1970. He explained why the lack of large percentages of minorities and women does not indicate any discrimination at any relevant time in this case. The Court is convinced by his testimony not only was there no discrimination based on sex in 1970 but that, if anything, the mentioned ongoing affirmative action program gave the minorities and women a substantial advantage in hiring and in job treatment, including job evaluation and promotion consideration.

5. Four employees of GSA who had worked under her supervision testified as to her job competency and that they experienced no difficulty in working with or under her.

6. There is no evidence of any bias based on sex during or because of this conference. Nor is there any evidence that Mr. Hilleson had any bias based on sex.

sured; the filing by Mullinix for the new job on August 11, 1970, when it was not *posted* until August 12, 1970; the selection of only one person, Mr. Shields, to study and evaluate the two candidates; [7] some alleged procedural errors in the selection process,[8] which caused her to conclude there was sex based bias against her and that Mr. Mullinix had been pre-selected for the new position.[9]

Much time without offsetting benefit could be spent in this opinion in discussing in great detail plaintiff's contention that all of these mentioned matters, and a few others of a more minor nature, were a part of a plan by GSA and these defendants to discriminate against her on the basis of sex. Suffice it to say the undersigned judge has given full consideration to each and all of her contentions and has found them to be totally unsupported by the record insofar as they are relied upon as indicia of or evidence of bias against plaintiff based on sex. This Court is aware of the difficulty of proving sex discrimination even though it may exist in fact. However, this Court has very carefully examined all of plaintiff's contentions and the evidence with sensitivity for any such possible bias and has found none to exist. The evidence totally fails to support plaintiff's contentions of promotion and grade discrimination based on sex.

For the above reasons, the undersigned judge finds the issues against plaintiff and in favor of defendants. Plaintiff is not entitled to any of the relief she seeks in this action. Judgment is ordered accordingly.

7. The applicable Merit Selection Plan, § 16 (a) provides, "An evaluating authority may be a panel or an individual."

8. These have been set out in plaintiff's March 17, 1975 "suggestions" in her brief considered by this Court and have been determined both singly and as a group not to evidence any

bias based on sex. In the main they are not demonstrably procedural errors. Those few that *may* be, do not support or suggest any bias based on sex.

9. This belief is not supported by the weight of the credible evidence. The weight of the credible evidence is to the contrary.